UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY IRVIN, | ) | Case No.: 1:06 CV 1779 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF SHAKER HEIGHTS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

The court held a hearing on the issue of whether or not a compact disc containing video footage from July 27, 2005 (hereafter referred to as the "CD") was spoliated by any of the Defendants in this case. There is a security camera attached to the Shaker Heights Building of Public Works, and it points north and is directed at a parking lot across the street. It was in this same position in July 2005. The footage that the camera tapes is on a server, and it is "constantly rerecorded over . . . so there is no back-up tape." (Non Certified Rough Draft of Hearing Trans., at p. 42 (Speese Testimony).) Unless someone requests a copy of the footage to be burnt onto a compact disc, then there is no actual tape of the footage that the security camera captures. (*Id*., at p. 43.) The parties do not dispute that no copy of the video footage exists at the Shaker Heights Building of Public Works.

The Defense called seven witnesses: (1) William Boag, the Director of Public Works for the City of Shaker Heights; (2) Patricia Speese, Assistant Public Works Director for the City of Shaker Heights; (3) Matt Norman, former Cuyahoga County prosecutor; (4) Detective Patrick Carlozzi of

the Shaker Heights Police Department; (5) Sergeant Marvin Lamielle of the Shaker Heights Police Department; (6) Lieutenant Jeffrey Demuth of the Shaker Heights Police Department; and (7) Sergeant Richard Mastnardo of the Shaker Heights Police Department. William Boag and Patricia Speese largely testified to the placement of the video camera. Detective Carlozzi and an officer named Sergeant Bob Doles went to the Shaker Heights Building of Public Works to view the video footage of July 27, 2005, and made a copy of the footage on a CD. (*Id*., at pp. 43, 66.)

Mr. Carlozzi and Officer Mastnardo testified about the contents of the videotape, agreeing that it shows Plaintiff Rodney Irvin ("Irvin") walking west on Chagrin Boulevard while pushing a baby stroller, a silver car passing by, and a police cruiser passing by. There was no dispute regarding the fact that the silver car was driven by Bob Nance ("Nance"), Irvin's former brother-in-law, and the police cruiser was driven by Officer Mastnardo, one of the individual Defendants in this case. None of the witnesses knew what happened to the CD. Officer Lamielle and Detective Carlozzi agreed that the last time they saw the CD containing the video footage was when it was in the case jacket for the criminal case against Irvin. The criminal case ended in February 2006.

As articulated in this court's Order on February 16, 2011 (ECF No. 79), and argued by the parties in their opening statements (Def.'s Opening Statement, Non Certified Rough Draft of Hearing Trans., at p. 9; Pl.'s Opening Statement, at pp. 13-14), the court must find that the CD is relevant to the civil trial and that without the CD, Plaintiff would be prejudiced, in order to find that spoliation occurred. (Order, ECF No. 79, at p. 3.) Plaintiff argues that the CD is relevant because it shows the events leading up to the altercation between Plaintiff and the Defendant Officers. Plaintiff's counsel stated during the hearing that,

> First of all, detective -- Sergeant Mastnardo testified that he saw my client waving or flagging a car down 800 yards -- whatever the

> gentlemen testified, how far away. The operate [sic] way that you would have been able to see that, it had to be in the city of Shaker Heights, that we know, would have been depicted in the camera, because the officer testified that anything outside of that is in the City of Cleveland.
>
> Bob Nance says he didn't flag me down, I first saw him at East 154th, which is in the City of Cleveland. Therefore, once again, corroborating that the video, if they had it, would not have shown the flagging down, which that is what precipitated the stop, Judge. This was an alleged felony being committed while in the City of Cleveland, the flagging down by one drug dealer to another, that led ultimately to the stop in the City of Cleveland.
>
> Our position is that nothing happened in the City of Cleveland, okay, Bob Nance corroborates that. Officer Mastnardo doesn't see anything, because, didn't see any flagging down, the video would have shown that –

(Non Certified Rough Draft of Hearing Trans., at pp. 116-17.) Plaintiff's counsel also stated that,

> it is impossible if you listen to [Officer Mastnardo's] testimony for the events to have occurred the way they did . . . the tape would show that officer Mastnardo, according to his testimony, was literally right behind him, somewhere around here, which is at the corner of -- the arrow that I pointed out, around [Menlo] and Chagrin. . . . basically what I am saying is that the tape is important because it would destroy officer Mastnardo's testimony. It would be totally inconsistent with what he has testified to on direct testimony at the criminal trial, as well as a deposition, as well as his statements.

(*Id*., at p. 14.)

Defendant argues that the CD is not relevant because it only shows Irvin, Nance, and Mastnardo passing by the parking lot north of the Shaker Heights Public Works Building. Both parties agree that the CD does not show the alleged altercation between Irvin and Defendant police officers.

The court finds that the CD does not contain footage relevant to any disputed fact in this case. Defendants have not taken the position that the CD would have shown Nance or Irvin giving a hand signal to the other. As discussed in detail during the hearing, the camera that provided the

-3-

footage for the CD does not tape any part of Cleveland but only tapes a portion of a parking lot in the City of Shaker Heights and the street in front of it. Plaintiff's counsel argued during the hearing that the CD would conflict with Mastnardo's deposition testimony, but a copy has not been provided to the court. However, testimony of Officer Mastnardo and all other pertinent witnesses at the hearing show that they first observed a male pushing a baby stroller, and then observed a silver Hyundai, and finally viewed Mastnardo's police cruiser, all on the CD, traveling east to west on Chagrin Boulevard. Thus, there is no disagreement between Plaintiff and Defendants regarding whether a hand gesture was captured on the CD.

The court notes that, in reaching its conclusion, it faces a vexing problem created by the fact that the officers clearly had the CD and viewed the footage, but noone can account for its whereabouts. This raises grave concerns about the process by which the CD was handled. Not only could the witnesses involved in the matters related to the criminal trial not testify to what happened to the CD, but they presented no coherent explanation of departmental policies regarding receipt of evidence and how, and under what circumstances, evidence may be disposed. Because, however, the court finds that the CD is not relevant to a disputed fact in this case, Plaintiff is not prejudiced by not having the CD. Therefore, it is unnecessary to determine at this point whether the Defendants intentionally destroyed the CD. *See United States v. Manns*, 277 F. App'x 551, 558 (6th Cir.2008) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir.2003) ("Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.").

The court hereby denies Plaintiff's Motion for Sanctions. (ECF No. 65.)

IT IS SO ORDERED.

        /S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 21, 2011